UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MARIO DARNELL SMITH, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| v. | ) | No. 4:13 CV 1898 RWS |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Petitioner Mario Darnell Smith has filed a motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion"). Smith asserts that he received ineffective assistance of counsel.

For the reasons set forth below, I will deny Smith's motion.

**I.  Background**

The following background facts are taken from Smith's underlying direct appeal to the United States Court of Appeals for the Eighth Circuit in United States v. Smith, 715 F.3d 1110, 1113-14 (8th Cir. 2013):

> In May 2011, an individual posing as an AmerenUE employee started contacting U.S. Bank. The individual attempted to set up a "cash vault delivery" from an AmerenUE account at U.S. Bank. Cash vault delivery is a service that allows authorized customers to select locations for cash deliveries. The individual made all of his attempts either over the telephone or through e-mail, using fake e-mail accounts and Internet domain names in an attempt to impersonate an AmerenUE employee. AmerenUE and U.S. Bank employees learned of the scheme and notified the Federal Bureau of Investigation (FBI).
>
> FBI Special Agent Brian Jackson was assigned to the case. He began his investigation by consulting with Special Agent Lyonel Myrthil, the bank crimes coordinator in the FBI's St. Louis office. Special Agent Myrthil informed Special Agent Jackson that he had heard of a similar scheme in Los Angeles that may have involved Mario Smith, who had since relocated to St.

Louis. Smith was on supervised release in St. Louis for being a felon in possession of a firearm and had previously been convicted of fraud.

Special Agent Jackson learned that most of the e-mails sent as part of the present scheme were sent from free, publicly available wireless access points. One access point was traced to a house across the street from Smith's residence. The wireless router at the house across the street was unprotected and anyone within range could use that access point.

U.S. Bank provided Special Agent Jackson with the cash vault questionnaires that the individual behind the scheme completed to obtain the cash vault delivery. By analyzing the documents' data, Special Agent Jackson was able to learn that the username of the individual who completed the questionnaire was "bigdaddyallday." Special Agent Jackson conducted an Internet search for "bigdaddyallday" and discovered a YouTube account under that name. Smith was in several videos and photographs belonging to this account. Also, the investigation revealed that one of the cash vault delivery requests was made for pick-up in the Chicago area. On June 15, 2011, Smith requested permission from his probation officer to travel to Illinois.

U.S. Bank also provided Special Agent Jackson with a recording of a phone conversation between a bank employee and the individual posing as an AmerenUE employee. Special Agent Myrthil identified the voice as Smith's. Special Agent Myrthil had listened to a televised interview with Smith and also had spoken with Smith and listened to Smith's voice on multiple other occasions.

After learning the above information, on June 20, 2011, the FBI placed Smith under surveillance. That morning, an individual authorities suspected was Smith called U.S. Bank, and while impersonating an AmerenUE employee, requested a cash vault delivery of approximately $180,000. During surveillance, agents observed Smith drive, along with Sahib Lewis, to Smith's residence and pick up a messenger bag. Smith and Lewis then drove to a Quizno's restaurant in downtown St. Louis. Agents entered Quizno's to arrest Smith, but he was in the restroom. Agents arrested Smith once he exited the restroom. Smith was uncooperative during arrest, refusing to place his hands in the view of the officers or sit down. The agents were aware that Smith had a history of resisting arrest.

Agents seized the messenger bag, which was roughly 15 to 20 feet away from Smith at a table with Lewis. While Smith was being handcuffed, he repeatedly told Lewis to take the bag. During Smith's arrest, Lewis was detained, but unrestrained, and could reach the bag. Special Agent Myrthil later stated he believed seizure of the bag was necessary for officer safety. Further, judging by the size and shape of the bag, agents believed the bag contained a laptop.

The agents believed that a laptop had been used in furtherance of the scheme because of the use of wireless access points to connect to the Internet. Special Agent Myrthil seized the bag and immediately after touching the bag could feel a laptop inside. Agents did not know whether the bag contained any weapons. Agents also seized three cell phones that were on Smith at the time of arrest.

Agents then took the bag to the FBI office in St. Louis, where Detective Brian Mize inventoried the bag. Detective Mize discovered a laptop, a fourth cell phone, and bank records during the inventory. Agents then interviewed Smith after a valid Miranda waiver. Smith admitted to his involvement in the scheme.

Special Agent Jackson then placed the four cell phones and the laptop in a "Faraday" bag to prevent remote access so the phone could not be remotely wiped. Special Agent Jackson also placed the phones in "airplane mode" to preserve battery life. He created an inventory list, but the list did not detail which cell phones were found on Smith's person and which were found in the bag. Special Agent Jackson obtained a search warrant for the bag, laptop, and four cell phones.

Smith was charged in a five count superseding indictment with one count of bank fraud, in violation 18 U.S.C § 1344, three counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A, and one count of conspiracy to commit bank fraud, in violation of 18 U.S.C. § 371. See 4:11-CR-00288 Doc. # 39. Smith filed motions to suppress evidence and statement, as well as a motion for a Franks hearing. Id. at Doc. #s 22, 23, 58. After two evidentiary hearings and extensive briefing, United States Magistrate Judge Terry Adelman recommended that all of Smith's motions be denied. Id. at Doc. #s 85, 106, 112. I adopted Judge Adelman's recommendations.

On May 4, 2012, Smith pleaded guilty to each of the counts in the indictment, and the Assistant United States Attorney agreed to recommend a total term of imprisonment on those charges should be limited to sixty months. Id. at Doc. # 124. The parties recommended that Smith also serve a period of twelve to eighteen months of community corrections or home

confinement upon release, and that Smith should receive another twelve months of imprisonment because he had violated his supervised release in a prior case. Id. Smith reserved the right to appeal the denial of his pretrial evidentiary motions. Id.

At his plea hearing, Smith told me, under oath that he was satisfied with his counsel's representation. (Plea Hr'g Tr. at 6). Smith told me he had gone over his plea agreement with counsel and that counsel answered all of Smith's questions. Id. at 9. Smith stated that no one had made any other promise or assurance to him in order to induce him to plead guilty. Id. at 21. Smith stated that he understood that he had the opportunity to plead not guilty and have a trial by jury, and that he knew that there would be no trial if he entered a guilty plea. Id.

Smith now claims that he received ineffective assistance of counsel.

## II. Grounds for Relief

In his 28 U.S.C. § 2255 motion, Smith alleges the following grounds for relief:

1. He was denied effective assistance of counsel in violation of the Sixth Amendment when his counsel:
   a) failed to seek dismissal of Counts Two through Four due to multiplicity;
   b) failed to seek dismissal of Counts Two through Four and allowed him to plead guilty when the indictment lacked an essential element of the offense;
   c) led him to believe that his potential sentencing exposure on Counts Two through Four was up to six years;
   d) incorrectly advised him as to the plea agreement, causing him to receive a stiffer sentence;
   e) failed to inform him of the unconstitutionality of Counts Two through Four causing him to forego his trial.

## III. Standard for § 2255 Relief

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to

impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255; Watson v. United States, 493 F.3d 960, 963 (8th Cir. 2007) ("Under 28 U.S.C. § 2255 a defendant in federal custody may seek post- conviction relief on the ground that his sentence was imposed in the absence of jurisdiction or in violation of the Constitution or laws of the United States, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."). A motion pursuant to § 2255 is "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis v. United States, 417 U.S. 333, 343 (1974).

"Issues raised and decided on direct appeal cannot ordinarily be relitigated in a collateral proceeding based on 28 U.S.C. § 2255." United States v. Wiley, 245 F.3d 750, 752 (8th Cir. 2001). One exception arises when there is a "miscarriage of justice," but the Eighth Circuit Court of Appeals has "recognized such an exception only when petitioners have produced convincing new evidence of actual innocence, and the Supreme Court has not extended the exception to situations beyond involving a petitioner's actual innocence." Id. (citations omitted) "[T]he Court has emphasized the narrowness of the exception and has expressed its desire that it remain rare and available only in the extraordinary case." Id. (citations omitted). Section 2255 ordinarily "is not available to correct errors which could have been raised at trial or on direct appeal." Ramey v. United States, 8 F.3d 1313, 1314 (8th Cir. 1993). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." Bousley v. United States, 523 U.S.614, 622 (1998) (citations omitted).

## IV. ANALYSIS

### A. Smith Received Effective Assistance Of Counsel

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. A claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal. See United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). To prevail on a claim alleging ineffective assistance of counsel, the defendant must satisfy the two-part test of Strickland v. Washington, 466 U.S. 668 (1984). "First, the defendant must first show that the counsel's performance was deficient." Id. at 687. This requires the defendant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. A defendant can demonstrate that counsel's performance was deficient where "counsel's representation fell below an objective standard of reasonableness." Id. at 688. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Id. at 690). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. If the defendant fails to show that his counsel was deficient, the court need not address the second prong of the Strickland test. See Brown v. United States, 311 F.3d 875, 878 (8th Cir. 2002).

To meet the second prong of Strickland, the defendant must demonstrate that the deficient performance was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the context of a guilty plea, a "defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

The Eighth Circuit has described the Strickland test as follows: the questions a court must ask are "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." Fields v. United States, 201 F.3d 1025, 1027 (8th Cir. 2000). When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Considered objectively, counsel's performance is gauged by "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" Fields, 201 F.3d at 1027 (quoting Strickland, 466 U.S. at 688). "[W]e avoid making judgments based on hindsight." Id. A reviewing court's "scrutiny of counsel's performance must be highly deferential." Strickland, 466 U.S. at 689. Where a defendant raises multiple claims of ineffective assistance, each claim must be examined independently rather than collectively. See Hall v. Luebbers, 296 F.3d 685, 692–93 (8th Cir. 2002).

### a. Counsel Was Not Ineffective In Failing To Seek Dismissal Of Counts Two Through Four Due To Multiplicity

Smith asserts that his attorney was ineffective for failing to seek dismissal of Counts Two through Four because those counts were multiplicitous. He argues that the counts are multiplicitous because although he used multiple stolen identities on different dates, the identities were used in connection with a single bank fraud scheme. (See Movants Memorandum in Support of 2255 Motion at 5.) Therefore, each identity theft should be included as one violation. Id.

"A 'multiplicitous' indictment is one that charges a single offense in multiple counts and generally is not improper in a well-pleaded indictment." United States v. Worthon, 315 F.3d 980, 983 (8th Cir. 2003). "[W]hether an aggregate of acts constitutes a single course of conduct and therefore a single offense, or more than one, may not be capable of ascertainment merely from the bare allegations of an information and may have to await the trial on the facts." Id.
"[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." Blockburger v. United States, 284 U.S. 299, 304 (1932). The same act or transaction may violate two distinct statutes under Blockburger "notwithstanding a substantial overlap in the proof offered to establish the crimes." Iannelli v. United States, 420 U.S. 770, 785 n. 17 (1975).

Here, Counts Two, Three and Four each require proof of facts that the other two counts do not require. Count Two requires proof that Smith used the identity of T.C. on May 12, 2011, as part of registering the phony Internet domain for ameren-ill.com. (Plea

Agreement at 6.) Count Three required proof that Smith used the identity of J.B. on May 26, 2011, in a fraudulent cash vault questionnaire he emailed U.S. Bank. See Id. Count Four required proof that Smith used the identity of T.C. on May 29, 2011, as part of registering another phony website, amerenue-illinois.com. See Id. Each individual count of aggravated identity theft required proof of facts and circumstances which the others did not.

As a result, Counts Two through Four were not multiplicitous and counsel is not ineffective for failing to make a meritless argument. See Dyer v. United States, 23 F.3d 1424, 1426 (8th Cir. 1994); see also Rodriguez v. U.S., 17 F.3d 225, 226 (8th Cir. 1994) ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").

### b. Counsel Was Not Ineffective Due To The Alleged Lack of an Essential Element In Failing To Seek Dismissal Of Counts Two Through Four And Allowing Smith To Plead Guilty

Smith asserts that his attorney was ineffective for failing to seek dismissal of Counts Two through Four because those counts failed to state an essential element of the crime charged. (Movant's Second Motion to Amend at 2-3). Specifically, Smith argues that the bank fraud count alleged in Count 1 was completed on June 20, 2011, so the aggravated identity theft counts cannot have occurred "during and in relation to" the predicate bank fraud charge. Id. at 3. Smith contends that because the counts failed to state a claim his counsel was also ineffective in allowing him to plead guilty to Counts Two through Four. Id. at 4.

Counts Two, Three, and Four of Smith's case alleged violations of Title 18, U.S. C. Section 1028A(a)(1), which states that "Whoever, during and in relation to any felony violation enumerated in subsection (c), knowingly … uses without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such

9

felony, be sentenced to a term of imprisonment of 2 years." One of the enumerated offenses for an aggravated identity theft violation is bank fraud. See § 1028(A)(c)(5).

Counts Two, Three, and Four alleged that, "during and in relation to a violation of Title 18, United States Code, Section 1344," Smith used a means of identification of another person without lawful authority. 4:11-CR-00288 Doc. # 39 at ¶ 6. The Eighth Circuit has not yet interpreted the phrase "during and in relation to" in § 1028A, but the Sixth Circuit has interpreted the phrase to mean "that the identify theft must have 'some purpose or effect with respect to' the predicate crime." United States v. Mobley, 618 F.3d 539, 549 (6th Cir. 2010).

The predicate crime here was bank fraud, and the events regarding Counts Two through Four indicated that the identity theft occurred in furtherance of Smith's bank fraud scheme. Smith argues that the bank fraud occurred on June 20, 2011 so any identity theft that occurred before that date could not be related to his bank fraud. Smith's attempt to limit the scope of the bank fraud charge is without a basis in fact or law. Count One of the indictment alleged the predicate bank fraud scheme, beginning sometime around April 20, 2011 and ending on June 20, 2011. 4:11-CR-00288 Doc. # 39 at ¶ 6. Count One asserts that the bank fraud took place over time from April to June 2011. It does not assert that the fraud occurred only on June 20, 2011 as Smith contends. Count One also alleged that on May 12 and 29, 2011, Smith unlawfully used another's identity information to register fake internet domain names which were used to defraud U.S. Bank. Id. at ¶¶ 9-11. Count one also alleged that on May 26, 2011, as part of the scheme, Smith unlawfully used another's identity information to complete and send a Cash Vault Questionnaire, wherein Smith falsely represented himself as an Ameren employee to defraud U.S. Bank. Id. at ¶ 12.

Moreover, each Count related to a step taken by Smith in furtherance of the bank fraud scheme. Count Two related to the identity theft occurring on May 12, 2011. Id. at 4. Count Three related to identity theft occurring on or about May 26, 2011. Id. Count Four related to identity theft occurring on or about May 29, 2011. Id. at 5. Because each Count related to the steps taken by Smith to facilitate his bank fraud scheme, Counts Two through Four did allege that the identity theft occurred "during and in relation to" the predicate bank fraud. Therefore, the superseding indictment did not fail to state the essential elements of the claim, and Smith's counsel was not ineffective for failing to seek dismissal of Counts Two through Four. See Rodriguez 17 F.3d 225, 226 ("[C]ounsel's failure to raise a meritless argument cannot constitute ineffective assistance.").

Likewise, Smith's counsel was not ineffective for allowing Smith to plead guilty to Counts Two through Four. The advice Smith's counsel gave was legally and factually sound due to the sufficiency of the superseding indictment. Because allowing Smith to plead guilty to Counts Two through Four was not ineffective assistance, Smith's claim is meritless.

### c. Counsel Was Not Ineffective In Advising Smith That His Potential Sentencing Exposure On Counts Two Through Four Was Up To Six Years

Smith contends that he allegedly received ineffective assistance because he was "erroneously led to believe [that his potential] sentencing exposure" on Counts Two through Four was up to six years. (Movant's Memorandum in Support of 2255 Motion at 2.)

Counts Two, Three, and Four of Smith's case alleged violations of Title 18, U.S.C. Section 1028A(a)(1). The offense of aggravated identity theft requires a sentence of 24 months, which must run consecutively to any other term of imprisonment imposed by the court at the same time. See 18 U.S.C. § 1028A(b). The only exception to this statutorily

mandated rule grants a district court discretion to run additional § 1028A sentences imposed at the same time concurrently with each other. Id. § 1028A(b)(4). A district court must exercise that discretion "in accordance with any applicable guidelines and policy statements issued by the Sentencing Commission." Id. The relevant provision of the Sentencing Guidelines contains a non-exclusive list of factors for the district court to consider in determining whether to run additional § 1028A sentences concurrently with or consecutively to each other, including the "nature and seriousness of the underlying offenses," the groupability of the offenses under § 3D1.2, and whether "the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2) are better achieved by imposing a concurrent or a consecutive sentence." United States v. Lee, 545 F.3d 678, 680-81 (8th Cir. 2008).

As a result, it was within my discretion to impose a sentence of up to six years for the three counts of aggravated identity theft. The Presentence Investigation Report prepared in this case noted that the Court had discretion to run the convictions on Counts Two through Four concurrent or consecutive with each other. PSR at ¶ 92. At the sentencing hearing, neither party objected to the Presentence Investigation Report. (Sentencing Hr'g at 3.) I had discretion to increase Smith's sentence by six years, consecutive to any term of imprisonment imposed on Count One, upon his convictions on Counts Two through Four. That I decided to give effect to the stipulated sentence of sixty months, as proposed in the plea agreement, does not alter the fact that I had discretion to enter a longer sentence. Therefore, counsel's advice was legally and factually accurate. Thus, Smith's claim that he received ineffective assistance of counsel due to "erroneous" advice is meritless.

### d. Counsel Was Not Ineffective In Advising Smith He Could Face Up To A Six Year Consecutive Sentence, Causing Him To Agree To The Plea Agreement

Smith alleges that he received a stiffer sentence because his counsel advised him that he could face up to a six year consecutive sentence if convicted on each of the aggravated identity theft counts. (Movant's Memorandum in Support of 2255 Motion at 2.) He states that he was "misled into believing that he was facing a potential mandatory minimum sentence of 6 years on counts 2-4 alone, before computation of the sentence on counts 1 and 5 of the superseding indictment. This caused movant much anxiety and fear. It caused him to delay his eventual guilty plea. The delay in his eventual guilty plea caused him to lose the chance to obtain an extra acceptance of responsibility point under 3E1.1(b) of the sentencing guidelines." Id. at 2.

As explained above, counsel's advice as to the six year consecutive sentence was legally and factually accurate. Additionally, Smith did not receive a stiffer sentence since he was facing a maximum possible term of imprisonment of thirty years on Count One and five years on Count Five. Because Smith committed the bank fraud and identity theft while on supervised release for an earlier violent crime conviction and a few years after being sentenced on another federal identity theft crime, Smith could have faced a much longer term of imprisonment. However, due to the plea agreement, Smith faced a sentence of sixty months imprisonment with a five year term of supervised release and restitution to U.S. Bank. (Sentencing Hr'g at 6-8.) The sentence consisted of a term of thirty-six months imprisonment on each of Counts 1 and 5, running concurrently, and two years on each of Counts Two through Four to be served concurrently with each other but consecutive to Counts 1 and 5, for an aggregate term of sixty months. (Sentencing Hr'g at 7.) Therefore, Smith's claim that his counsel was ineffective in causing him to get a stiffer sentence is meritless.

13

### e. Counsel Was Not Ineffective In Failing To Advise Smith As To The Alleged Unconstitutionality Of Counts Two Through Four

Smith asserts that his counsel was ineffective for failing to inform him of the unconstitutionality of Counts Two through Four causing him to forego his trial. (Movants Memorandum in Support of 2255 Motion at 1-2.) Smith alleges, "The indictment's multiplicity and the movants subsequent guilty plea to the entire indictment violated the movants 5th amendment right against double jeopardy. The movant would have gone to trial had he not been facing a multiplicitous indictment."

However, as stated above, the indictment was not multiplicitous in asserting Counts Two through Four. Therefore, it did not violate his 5th amendment right against double jeopardy. As a result, Smith's claim that his counsel was constitutionally ineffective for failing to challenge the constitutionality of Counts Two through Four is without merit.

### B. An Evidentiary Hearing Is Not Warranted

I will not hold an evidentiary hearing on this matter. "A petitioner is entitled to an evidentiary hearing on a section 2255 motion unless the motion and the files and records of the case conclusively show that he is entitled to no relief." Anjulo–Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (internal quotation marks omitted). An evidentiary hearing need not be held if Smith's "allegations cannot be accepted as true because they are contradicted by the record, inherently incredible or conclusions rather than statements of fact." Delgado v. United States, 162 F.3d 981, 983 (8th Cir. 1998). Because the record conclusively shows that Smith is not entitled to relief as a matter of law, I need not hold a hearing.

## C. Certificate of Appealability

For this Court to grant a certificate of appealability, Smith must make a substantial showing that his constitutional right was denied. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." Id. For the reasons set forth above, I find Smith has not made such a showing. As such, I will not issue a certificate of appealability.

Accordingly,

**IT IS HEREBY ORDERED** that the motion of Mario Darnell Smith to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for an evidentiary hearing is **DENIED.**

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Smith has not made a substantial showing of the denial of a federal constitutional right.

**IT IS FURTHER ORDERED** that Smith's motion to expedite [#24] and his motion for summary judgment [#25] are **DENIED** as moved.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 28th day of March, 2014.